Winship v. Winship.

---

SUSAN WINSHIP *vs.* GEORGE WINSHIP.

1. A citizen of another state, bringing his effects into this, to establish a residence here, with the manifest intent of procuring a divorce, and immediately commencing a suit for that purpose, is not an inhabitant or a resident of this state, within the meaning of "the act concerning divorces." (*Nix. Dig.* 223, ¿ 1.)

2. Under such circumstances, this court will not maintain jurisdiction of a suit for divorce, though the charge of adultery be clearly proved against the defendant.

---

*Slaight*, for complainant.

*Gilchrist*, for defendant.

THE CHANCELLOR. The bill is filed for divorcé, on the ground of adultery. The guilt of the defendant is clearly

proved.   The complainant admits, in her evidence, that she was living with the defendant in a state of adultery for two years prior to, and at the time of her marriage, and the evidence is quite satisfactory, that after her marriage she was guilty of adultery with a companion of her husband. The latter offence is claimed to have been condoned.

The husband admits, that since the discovery of his wife's adultery, he has been living in a state of adultery with another woman, but alleges that he did so with his wife's consent.   I refer to these facts as showing that the case, as disclosed, does not commend itself to the favorable consideration of the court.   It is apparent that the marriage relation was entered into by the parties as a mere matter of convenience, and is sought to be dissolved from no higher motive.   The answer alleges that the bill was filed by collusion ; the husband suggesting the course to be pursued, and agreeing not to make any opposition.   He opposes the divorce, not because he has any objection to being discharged from his marital obligations, but because, as he insists, the wife is attempting, contrary to their agreement, to subject him to the costs of the proceeding.   The wife qualifies, without denying the substance of the charge of collusion to obtain the divorce.   It is apparent from the evidence, that both before and since the filing of the bill, the parties have had interviews with each other on the subject of the divorce.   The conduct of the parties has been such as naturally to arouse suspicion, and justify extreme vigilance on the part of the court in guarding against gross imposition.

If there were no other ground of objection, I should have felt very reluctant, in a case characterized by such repulsive features, to interfere for the relief of either of the parties.

But there is, in my judgment, another and more decisive ground against granting relief.   The parties are neither of them citizens of this state.   They are citizens of the state of New York.   They were married in that state.   They have had their home there since the marriage.   The husband testifies that he has never been a citizen of this state.   At the

time the bill was filed he lived in the city of New York, but worked for his brother in the city of Hudson. In the early part of April, 1862, shortly before the bill was filed, the woman, with whom the adultery is charged to have been committed, kept house in the city of Hudson, and the defendant sometimes slept there. When the wife received this intelligence she was living in the city of New York. The wife states that when she commenced this suit she was living in Jersey City, but she had left her trunk at a friend's in New York. She subsequently says : " When I first heard of it my trunk was at Mrs. Lewis', and I had it brought over here right away, and before I commenced this suit." Is it possible for evidence to disclose more clearly the animus with which a residence in New Jersey was chosen ? Admit that the complainant, with her trunk, reached her lodgings in Jersey City a day or a week before the bill was filed, does that constitute a residence in this state within the meaning of the act of the legislature ? I do not think that she was either an inhabitant or a resident of this state within the meaning of the act concerning divorces. The legislature did not intend to invite the commission of lewdness within the state, nor to hold out inducements to the citizens of other states to abandon the appropriate forum for the adjudication of their wrongs and seek redress in our courts. I cannot believe that they designed to subject the soil of the state to such pollution, or her courts of judicature to such degradation. I know that the language of the statute is very broad, and may, in its terms, embrace the case now under consideration. But I nevertheless think that the legislature were legislating for the citizens of this state, not for others. The subject is one of grave importance, and is daily assuming a more serious aspect. At this hour, a large proportion of the divorces asked for in this court is by citizens of other states, who come into this state for the mere purpose of obtaining a divorce, and often in evasion of their own laws. There is too much reason to apprehend collusion of parties in actions of divorce, in regard to the

establishment of a domicil, as well as with respect to the procedure. Conflict of jurisdiction, injury to morals, reproach to our law, oppression and fraud, as well as obloquy to the judicature which must administer the law, are the evident consequences which must follow from the influx of parties from other states to obtain a dissolution of marriage here, in opposition to the rule of their own law.

The bill is dismissed.